In the United States District Court
for the Eastern District of Kentucky
Lexington Division

---

| | |
|---|---|
| Brian Fox, | |
| *On behalf of himself and those similarly situated*, | Case No. |
| Plaintiff, | Judge |
| v. | Magistrate Judge |
| Team Goliath, Inc., Christian Reisch, and Jason Dascher, | Jury Demand Endorsed Hereon |
| Defendants. | |

---

Class and Collective Action Complaint

---

1.      Brian Fox, on behalf of himself and similarly-situated individuals, brings this action against Defendants Team Goliath, Inc., Christian Reisch, and Jason Dascher ("Defendants"). Plaintiff seeks appropriate monetary and equitable relief based on Defendants' willful failure to compensate Plaintiff and similarly-situated individuals with minimum wages and overtime wages as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*. and Kentucky wage and hour law.

2.      Defendants operate approximately 13 Domino's Pizza franchises in Kentucky (the "Team Goliath Domino's" stores or restaurants).

3.      Defendants repeatedly and willfully violated the Fair Labor Standards Act and Kentucky wage and hour law by failing to adequately reimburse delivery drivers for their delivery-

related expenses, thereby failing to pay delivery drivers the legally mandated minimum wage wages for all hours worked.

4.      All delivery drivers at the Team Goliath Domino's stores, including Plaintiff, have been subject to the same or similar employment policies and practices, including policies and practices with respect to wages and reimbursement for work-related expenses.

5.      Plaintiff brings this action on behalf of himself and similarly situated current and former delivery drivers who elect to opt in pursuant to FLSA, 29 U.S.C. § 216(b) to remedy violations of the FLSA wage and hour provisions by Defendants.

6.      Plaintiff also brings this action on behalf of himself and similarly situated current and former delivery drivers in Kentucky, pursuant to Federal Rule of Civil Procedure 23, to remedy violations of Kentucky wage and hour law, K.R.S. §§ 337.275, 337.060, and 337.385.

**Jurisdiction and Venue**

7.      Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over Plaintiff's FLSA claims.

8.      Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's state law claims.

9.      Venue in this Court is proper under 28 U.S.C. § 1391(b) because the parties reside in this district, and a substantial part of the events giving rise to the claim herein occurred in this district.

**Parties**

**Plaintiff**

**Bryan Fox**

2

10.    Plaintiff Brian Fox is a resident of Fayette County, Kentucky and, at all times material herein, Plaintiff worked within the boundaries of Eastern District of Kentucky.

11.    Plaintiff was an "employee" of all of the Defendants as defined in the FLSA and Kentucky wage law.

12.    Plaintiff has given written consent to join this action.

**Defendants**

**Team Goliath, Inc.**

13.    Defendant Team Goliath, Inc. is a domestic corporation authorized to do business under the laws of Kentucky.

14.    Team Goliath, Inc.'s principal office is in Scott County, Kentucky.

15.    Team Goliath, Inc. is the corporate entity that appears on Plaintiff's paystubs for the work he completed for Defendants.

16.    Team Goliath, Inc. was incorporated by Christian Reisch and Jason Dascher.

17.    Christian Reisch is the President of Team Goliath, Inc.

18.    Jason Dascher is the Vice President of Team Goliath, Inc.

19.    Team Goliath, Inc. maintains its principal office at 155 Camp Creek Way, P.O. Box 1350, Georgetown, Kentucky 40324.

20.    Team Goliath, Inc. has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

21.    Team Goliath, Inc. has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

3

22.     At all relevant times, Team Goliath, Inc. maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

23.     Team Goliath, Inc. is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA and Kentucky law.

24.     At all relevant times, Team Goliath, Inc. has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

25.     Team Goliath, Inc.'s gross revenue exceeds $500,000 per year.

**Christian Reisch**

26.     Upon information and belief, Defendant Christian Reisch is one of two owners of Team Goliath, Inc.

27.     Christian Reisch is the president and founder of Team Goliath, Inc.

28.     Christian Reisch is a resident of Scott County, Kentucky.

29.     Christian Reisch is individually liable to the Team Goliath Domino's delivery drivers under the definitions of "employer" set forth in the FLSA and Kentucky wage law, because he owns and operates the Team Goliath Domino's stores, serves as a manager and/or member of Team Goliath, Inc., ultimately controls significant aspects of the Team Goliath Domino's day-to-day functions, and ultimately controls compensation and reimbursement of employees.  29 U.S.C. § 203(d).

30.     At all relevant times, by virtue of his role as owner and president of Team Goliath, Inc., Christian Reisch has had financial control over the operations at each of the Team Goliath Domino's stores.

31.     At all relevant times, by virtue of his role as owner and president of Team Goliath, Inc., Christian Reisch has a role in significant aspects of the Team Goliath Domino's stores' day to day operations.

32.     At all relevant times, by virtue of his role as owner and president of Team Goliath, Inc., Christian Reisch has had control over the Team Goliath Domino's stores' pay policies.

33.     At all relevant times, by virtue of his role as owner and president of Team Goliath, Inc., Christian Reisch has had power over personnel and payroll decisions at the Team Goliath Domino's stores, including but not limited to influence of delivery driver pay.

34.     At all relevant times, by virtue of his role as owner and president of Team Goliath, Inc., Christian Reisch has had the power to hire, fire and discipline employees, including delivery drivers at the Team Goliath Domino's stores.

35.     At all relevant times, by virtue of his role as owner and president of Team Goliath, Inc., Christian Reisch has had the power to stop any illegal pay practices that harmed delivery drivers at the Team Goliath Domino's stores.

36.     At all relevant times, by virtue of his role as owner and president of Team Goliath, Inc., Christian Reisch has had the power to transfer the assets and liabilities of Team Goliath, Inc.

37.     At all relevant times, by virtue of his role as owner and president of Team Goliath, Inc., Christian Reisch has had the power to declare bankruptcy on behalf of Team Goliath, Inc.

5

38.     At all relevant times, by virtue of his role as owner and president of Team Goliath, Inc., Christian Reisch has had the power to enter into contracts on behalf of each of the Team Goliath Domino's stores.

39.     At all relevant times, by virtue of his role as owner and president of Team Goliath, Inc., Christian Reisch has had the power to close, shut down, and/or sell each of the Team Goliath Domino's stores.

40.     At all relevant times, by virtue of his role as owner and president of Team Goliath, Inc., Christian Reisch had authority over the overall direction of each of Team Goliath Domino's stores and was ultimately responsible for their operations.

41.     The Team Goliath Domino's stores function for Christian Reisch's profit.

42.     Christian Reisch has influence over how the Team Goliath Domino's stores can run more profitably and efficiently.

**Jason Dascher**

43.     Upon information and belief, Defendant Jason Dascher is one of two owners of Team Goliath, Inc.

44.     Jason Dascher is the vice president and founder of Team Goliath, Inc.

45.     Jason Dascher is a resident of Scott County, Kentucky.

46.     Jason Dascher is individually liable to the Team Goliath Domino's delivery drivers under the definitions of "employer" set forth in the FLSA and Kentucky wage law, because he owns and operates the Team Goliath Domino's stores, serves as a manager and/or member of Team Goliath, Inc., ultimately controls significant aspects of the Team Goliath Domino's day-to-

6

day functions, and ultimately controls compensation and reimbursement of employees.   29 U.S.C. § 203(d).

47.     At all relevant times, by virtue of his role as owner and vice president of Team Goliath, Inc., Jason Dascher has had financial control over the operations at each of the Team Goliath Domino's stores.

48.     At all relevant times, by virtue of his role as owner and vice president of Team Goliath, Inc., Jason Dascher has a role in significant aspects of the Team Goliath Domino's stores' day to day operations.

49.     At all relevant times, by virtue of his role as owner and vice president of Team Goliath, Inc., Jason Dascher has had control over the Team Goliath Domino's stores' pay policies.

50.     At all relevant times, by virtue of his role as owner and vice president of Team Goliath, Inc., Jason Dascher has had power over personnel and payroll decisions at the Team Goliath Domino's stores, including but not limited to influence of delivery driver pay.

51.     At all relevant times, by virtue of his role as owner and vice president of Team Goliath, Inc., Jason Dascher has had the power to hire, fire, and discipline employees, including delivery drivers at the Team Goliath Domino's stores.

52.     At all relevant times, by virtue of his role as owner and vice president of Team Goliath, Inc., Jason Dascher has had the power to stop any illegal pay practices that harmed delivery drivers at the Team Goliath Domino's stores.

53.     At all relevant times, by virtue of his role as owner and vice president of Team Goliath, Inc., Jason Dascher has had the power to transfer the assets and liabilities of Team Goliath, Inc.

54.     At all relevant times, by virtue of his role as owner and vice president of Team Goliath, Inc., Jason Dascher has had the power to declare bankruptcy on behalf of Team Goliath, Inc.

55.     At all relevant times, by virtue of his role as owner and vice president of Team Goliath, Inc., Jason Dascher has had the power to enter into contracts on behalf of each of the Team Goliath Domino's stores.

56.     At all relevant times, by virtue of his role as owner and vice president of Team Goliath, Inc., Jason Dascher has had the power to close, shut down, and/or sell each of the Team Goliath Domino's stores.

57.     At all relevant times, by virtue of his role as owner and vice president of Team Goliath, Inc., Jason Dascher had authority over the overall direction of each of Team Goliath Domino's stores and was ultimately responsible for their operations.

58.     The Team Goliath Domino's stores function for Jason Dascher's profit.

59.     Jason Dascher has influence over how the Team Goliath Domino's stores can run more profitably and efficiently.

**Class-wide Factual Allegations**

60.     During all relevant times, Defendants have operated the Team Goliath Domino's stores.

61.     Some or all of the Team Goliath Domino's stores employs delivery drivers.

62.     Plaintiff and the similarly situated persons Plaintiff seeks to represent are current and former delivery drivers employed by Defendants at the Team Goliath Domino's stores.

8

63.     All delivery drivers employed at the Team Goliath Domino's stores over the last three years have had essentially the same job duties—deliver pizza and other food items to customers.

64.     When there are no deliveries to make, Defendants' delivery drivers are required to work inside the Team Goliath Domino's stores building pizza boxes, cleaning, preparing pizza and other food items, and completing other duties inside the restaurant as necessary.

65.     At all relevant times, Plaintiff and similarly situated delivery drivers have been paid minimum wage minus a tip credit for the hours they worked while completing deliveries.

66.     At all relevant times, Plaintiff and similarly situated delivery drivers have been paid minimum wage for the hours they worked inside the restaurant.

67.     The job duties performed by delivery drivers inside the store are not related to their tip-producing duties while they are out on the road making deliveries.

68.     The Team Goliath Domino's delivery drivers work "dual jobs."

69.     Defendants require delivery drivers to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

70.     Defendants require delivery drivers to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, financing charges, licensing and registration costs, cell phone costs, GPS charges, and other equipment necessary for delivery drivers to complete their job duties.

71.     Pursuant to such requirements, Plaintiff and other similarly situated employees purchase gasoline, vehicle parts and fluids, automobile repair and maintenance services,

9

automobile insurance, suffered automobile depreciation and damage, financing charges, pay licensing and registration costs, and incur cell phone and data charges all for the primary benefit of Defendants.

72.     None of the Team Goliath stores track or record their delivery drivers' actual expenses.

73.     None of the Team Goliath stores reimburse delivery drivers for their actual expenses.

74.     None of the Team Goliath stores reimburse delivery drivers at the IRS standard business mileage rate.

75.     None of the Team Goliath stores reimburse delivery drivers at a reasonable approximation of the delivery drivers' expenses.

76.     Plaintiff and similarly situated delivery drivers receive a per-mile reimbursement payment that is less than the IRS standard business mileage rate for each mile they drive while completing deliveries for Team Goliath.

77.     According to the Internal Revenue Service, the standard mileage rate for the use of a car during the relevant time periods have been:

       a.     2014: 56 cents/mile
       b.     2015: 57.5 cents/mile
       c.     2016: 54 cents/mile
       d.     2017: 53.5 cents/mile
       e.     2018: 54.5 cents/mile
       f.     2019: 58 cents/mile

78.     The delivery drivers at Team Goliath have incurred even more in expenses than those contemplated by the IRS standard business mileage rate—*e.g.*, cell phone and data charges.

79.     As a result of the automobile and other job-related expenses incurred by Plaintiff and other similarly situated delivery drivers, they were deprived of minimum wages guaranteed to them by the FLSA and Kentucky law.

80.     At all relevant times, Defendants have applied the same or similar pay policies, practices, and procedures to all delivery drivers at the Team Goliath stores.

81.     Because Defendants paid their drivers a gross hourly wage at precisely, or at least very close to, the applicable minimum wage, and because the delivery drivers incurred unreimbursed automobile expenses, the delivery drivers "kicked back" to Defendants an amount sufficient to cause minimum wage violations. *See* 29 C.F.R. § 531.35.

82.     Defendants are relying on the same flawed policy and methodology with respect to all delivery drivers at all of the Team Goliath stores.

83.     Defendants have failed to properly take a tip credit from Plaintiff's wages and the wages of similarly situated employees because, after accounting for unreimbursed expenses, Defendants have paid delivery drivers a lower wage rate than they informed the delivery drivers they would be paid.

84.     Defendants have failed to properly take a tip credit from Plaintiff's wages and the wages of similarly situated employees because they did not properly inform the delivery drivers of the tip credit requirements of the FLSA.

85.     Defendants have, during some workweeks, failed to properly claim a tip credit from Plaintiff's wage and the wages of similarly situated employees because, on large orders, Defendants send an invoice to their customers, which is sometimes paid (tip included) weeks later, not during the workweek the drivers earned it. Further, sometimes the tip is not paid out to the driver who completed the order.

86.     Defendants have willfully failed to pay minimum wage to Plaintiff and similarly situated delivery drivers at the Team Goliath stores.

**Plaintiff's Individual Factual Allegations**

87.     Plaintiff worked at a Team Goliath Domino's store in Lexington, Kentucky from October 2018 to April 2019.

88.     Plaintiff worked "dual jobs," as that term is defined by the FLSA regulations.

89.     Plaintiff was paid minimum wage minus a tip credit as an hourly rate for all hours worked while delivering food. Specifically, Plaintiff was paid $5.00 per hour.

90.     Plaintiff was paid minimum wage for all hours worked inside the restaurant. Specifically, Plaintiff was paid $7.25 per hour for these hours.

91.     Plaintiff was reimbursed $.30 per mile driven while completing deliveries for Defendants.

92.     Plaintiff was required to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

93.     Plaintiff was required to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and

parts, insurance, cell phone service, GPS service, automobile financing, registration and licensing costs, and other equipment necessary for delivery drivers to complete their job duties.

94.     Plaintiff purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, automobile financing, and incur cell phone and data charges all for the primary benefit of Defendants.

95.     Defendants did not track the actual expenses incurred by Plaintiff.

96.     Defendants did not reimburse Plaintiff based on his actual delivery-related expenses.

97.     Plaintiff was not reimbursed at the IRS standard mileage rate for the miles he drives while completing deliveries.

98.     During Plaintiff's employment with Defendants, Defendants failed to adequately reimburse Plaintiff for automobile and other job-related expenses.

99.     Plaintiff regularly made approximately 2-4 deliveries per hour during the hours he worked as a delivery driver.

100.     Plaintiff regularly drove approximately 3.5 miles per delivery.

101.     In 2019, for example, the IRS business mileage reimbursement has been $.58 per mile, which reasonably approximated the automobile expenses incurred delivering pizzas. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. Using the IRS standard business mileage rate as a reasonable approximation of his expenses, Defendants' policy under-reimbursed Plaintiff by $.28 per mile ($.58-$.30). Considering Plaintiff's estimate of about 3.5

average miles per delivery, Defendants under-reimbursed him about $.98 per delivery ($.28 x 3.5 average miles), and $2.94 for the hour ($.98 x 3 deliveries per hour).

102.    Defendants have failed to properly take a tip credit from Plaintiff's wages because, after accounting for unreimbursed expenses, Defendants have taken more of a tip credit than they informed Plaintiff they would be taking. Defendants also failed to inform Plaintiff of the requirements for taking a tip credit, as required by the FLSA.

103.    Plaintiff was denied his tips because some orders were paid weeks later by invoice. Sometimes, Plaintiff received his tips, but did not receive them in the weeks he earned them. Other times, upon information and belief, Defendants retained the tips on those invoiced orders.

104.    Upon information and belief, on at least one occasion, Defendants retained tips paid on the invoice for Plaintiff's delivery.

105.    As a result of unreimbursed automobile expenses and other job-related expenses, Defendants have failed to pay Plaintiff minimum wage as required by law.

**Collective Action Allegations**

106.    Plaintiff brings the First Count on behalf of himself and all similarly situated current and former delivery drivers employed at the Team Goliath restaurants owned, operated, and controlled by Defendants nationwide, during the three years prior to the filing of this Class Action Complaint and the date of final judgment in this matter, who elect to opt-in to this action (the "FLSA Collective").

107.    At all relevant times, Plaintiff and the FLSA Collective have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendants' decision, policy, plan, practices, procedures, protocols, and rules of

14

willfully refusing to pay Plaintiff and the FLSA Collective minimum wage for all hours worked and failing to reimburse delivery drivers for automobile expenses and other job-related expenses. Plaintiff's claims are essentially the same as those of the FLSA Collective.

108.    Defendants' unlawful conduct is pursuant to a corporate policy or practice.

109.    Defendants are aware or should have been aware that federal law required them to pay employees minimum wage for all hours worked and to fully reimburse for "tools of the trade."

110.    Defendants are aware or should have been aware of the requirements for taking a tip credit from their employees' wages under the FLSA.

111.    Defendants' unlawful conduct has been widespread, repeated, and consistent.

112.    The First Count is properly brought under and maintained as an opt-in collective action under 29 U.S.C. § 216(b).

113.    The FLSA Collective members are readily identifiable and ascertainable.

114.    In recognition of the services Plaintiff has rendered and will continue to render to the FLSA Collective, Plaintiff will request payment of a service award upon resolution of this action.

**Class Action Allegations**

115.    Plaintiff brings the Second and Third Counts under Federal Rule of Civil Procedure 23, on behalf of himself and a class of persons consisting of:

> All current and former delivery drivers employed by Defendant at Team Goliath Domino's stores in the State of Kentucky between the date five years prior to the filing of the original complaint and the date of final judgment in this matter ("Rule 23 Class").

116.    Excluded from the Rule 23 Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Class.

117.    The number and identity of the Rule 23 Class members are ascertainable from Defendants' records.

118.    The hours assigned and worked, the positions held, deliveries completed, and the rates of pay and reimbursements paid for each Rule 23 Class Member are determinable from Defendants' records.

119.    For the purpose of notice and other purposes related to this action, their names and contact information are readily available from Defendants.

120.    Notice can be provided by means permissible under Rule 23.

121.    The Rule 23 Class members are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

122.    There are more than 50 Rule 23 Class members.

123.    Plaintiff's claims are typical of those claims which could be alleged by any Rule 23 Class member, and the relief sought is typical of the relief which would be sought by each Rule 23 Class member in separate actions.

124.    Plaintiff and the Rule 23 Class members have all sustained similar types of damages as a result of Defendants' failure to comply with Kentucky wage law.

125.    Plaintiff and the Rule 23 Class members sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

126.    By seeking to represent the interests of the Rule 23 Class members, Plaintiff is exercising and intends to exercise his right to engage in concerted activity for the mutual aid or benefit of himself and his co-workers.

127.    Plaintiff is able to fairly and adequately protect the interests of the Rule 23 Class and has no interests antagonistic to the Rule 23 Class.

128.    Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

129.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

130.    This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

131.    Common questions of law and fact exist as to the Rule 23 Class that predominate over any questions only affecting Plaintiff and the Rule 23 Class members individually and include, but are not limited to:

a.  Whether Plaintiff and the Rule 23 Class members were subject to a common expense reimbursement policy that resulted in wages to drop below legally allowable minimum wage;

b.  Whether Plaintiff and the Rule 23 Class were subject to a policy that required them to maintain and pay for safe, operable, and legally compliant automobiles to use in completing deliveries;

c.  Whether Plaintiff and the Rule 23 Class incurred expenses for the benefit of Defendants in the course of completing deliveries;

d.  Whether Defendants tracked and reimbursed Plaintiff and the Rule 23 Class members for their actual expenses;

e.  Whether Defendants reimbursed Plaintiff and the Rule 23 Class members at the IRS standard business mileage rate for the miles they drove in making deliveries;

f.  Whether Defendants reimbursed Plaintiff and the Rule 23 Class members based on a reasonable approximation of the expenses they incurred;

g.  Whether Defendants failed to pay Plaintiff and the Rule 23 Class their earned wages in a timely manner; and

h.  The nature and extent of class-wide injury and the measure of damages for those injuries.

132.   In recognition of the services Plaintiff has rendered and will continue to render to the Rule 23 Class, Plaintiff will request payment of a service award upon resolution of this action.

### Causes of Action

### Count 1
### Failure to Pay Minimum Wages - Fair Labor Standards Act
### (On Behalf of Plaintiff and the FLSA Collective)

133.   Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

18

134.    Plaintiff and the FLSA Collective are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

135.    Defendants paid Plaintiff and the FLSA Collective at or close to minimum wage for all hours worked.

136.    Defendants required and continue to require Plaintiff and the FLSA Collective to pay for automobile expenses and other job-related expenses out of pocket, and failed to properly reimburse Plaintiff and the FLSA Collective for said expenses.

137.    Defendants failed to properly claim a tip credit from the wages of Plaintiff and the FLSA collective for the hours they worked on the road completing deliveries because Plaintiff and the FLSA collective were paid a wage rate lower than Defendants informed them that they would be paid.

138.    By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiff and the FLSA Collective.

139.    Plaintiff and the FLSA Collective have been damaged by Defendants' willful failure to pay minimum wage as required by law.

140.    As a result of Defendants' willful violations, Plaintiff and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

<u>**Count 2**</u>
**Failure to Pay Minimum Wage – K.R.S. § 337.275**
**(On Behalf of Plaintiff and the Rule 23 Class)**

141.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

142.     By failing to pay Plaintiff and the Rule 23 Class minimum wage for all hours worked, Defendants have violated K.R.S. § 337.275.

143.     As a result of Defendants' willful failure to pay Plaintiff and the Rule 23 Class minimum wage, Plaintiff and the Rule 23 Class are entitled to unpaid minimum wages, liquidated damages in the amount of unpaid minimum wages, reasonable attorneys' fees, and costs. K.R.S. § 337.385.

**Count 3**
**Failure to Pay Agreed Upon Wages – K.R.S. § 337.060**
**(On Behalf of Plaintiff and the Rule 23 Class)**

144.     Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

145.     Kentucky law, K.R.S. § 337.060, requires that Plaintiff and the Rule 23 Class be paid all wages agreed upon between the employer and the employee.

146.     By the acts described herein, Defendants have failed to pay all agreed upon wages to Plaintiff and the Rule 23 Class.

147.     As a result of Defendants' willful failure to pay Plaintiff and the Rule 23 Class agreed upon wages, Plaintiff and the Rule 23 Class are entitled to unpaid wages, liquidated damages in the amount of unpaid wages, 10% of unpaid wages, reasonable attorneys' fees, and costs. K.R.S. § 337.385; K.R.S. 337.990.

**WHEREFORE**, Plaintiff Brian Fox prays for all of the following relief:

A.     Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly-situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this

action, and appointment of Plaintiff and their counsel to represent the collective action members.

B.      Unpaid minimum wages, unpaid overtime wages, reimbursement of expenses, and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations.

C.      Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

D.      Designation of Plaintiff as representative of the Rule 23 Class and counsel of record as Class Counsel.

E.      An award of unpaid wages and unreimbursed expenses due under Kentucky law.

F.      An award of liquidated damages and interest under Kentucky law.

G.      An award of prejudgment and post-judgment interest.

H.      An award of costs and expenses of this action, together with reasonable attorneys' fees and expert fees.

I.      Such other legal and equitable relief as the Court deems appropriate.

Respectfully submitted,

/s/ Robert L. Abell
Robert L. Abell
Robert Abell Law
120 N. Upper St.
Lexington, KY 40507
859-254-7076 (Phone)
859-281-6541 (Fax)
(*robert@robertabelllaw.com*)

Andrew Biller (*Pro Hac Vice forthcoming*)
Andrew Kimble (*Pro Hac Vice forthcoming*)

Philip Krzeski (*Pro Hac Vice forthcoming*)
Biller & Kimble, LLC
3825 Edwards Road, Suite 650
513-715-8711 (Phone)
614-340-4620 (Fax)
(*abiller@billerkimble.com*)
(*akimble@billerkimble.com*)
(*pkrzeski@billerkimble.com*)

www.billerkimble.com

*Counsel for Plaintiff  and the putative class*

**JURY DEMAND**

Plaintiff hereby demands a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

/s/ Robert Abell
Robert Abell