# In the United States District Court
# for the Eastern District of Kentucky
# Lexington Division

Brian Fox,

*On behalf of himself and those similarly situated,*

Plaintiff,

v.

Team Goliath, Inc., *et al.*,

Defendants.

Case No. 5:19-cv-195-JMH

Judge Joseph M. Hood

## Order Granting Plaintiff's Unopposed Motion for Final Settlement Approval

Before the Court is Plaintiff's Unopposed Motion for Final Settlement Approval. The Court, having reviewed Plaintiff's Unopposed Motion for Final Settlement Approval and considered the arguments made during the Final Approval Hearing, hereby **GRANTS** Plaintiff's Motion.

### 1. Background

This is a wage and hour lawsuit brought on behalf of a class of pizza delivery drivers who worked at the Domino's Pizza stores allegedly owned and operated by Defendants Team Goliath Inc., Christian Reisch, and Jason Dascher. *See* Complaint, Doc. 1. Plaintiff filed his Complaint on May 3, 2019. *See id.* On June 28, 2019, the parties filed a Joint Motion to Stay Proceedings to explore settlement of this action. *See* Doc. 27. On July 2, 2019, the Court granted in part and

denied in part the parties' Joint Motion. *See* Doc. 30. The Court granted the parties' request for a stay, but declined to approve the parties' proposed notice. *Id.*

Plaintiff Fox filed the Complaint and moved to send notice of this lawsuit to similarly situated individuals in May 2019. Docs. 1-11.

On June 21, 2019, the Parties filed a joint motion to stay the proceedings in so that they could attempt to negotiate a settlement. Doc. 27. The joint motion also set forth that the parties agreed to conditional certification, if the negotiation was unsuccessful.

On November 8, 2019, the Parties attended an in-person mediation with Mark C. Travis of Travis ADR Services LLC. The mediation did not result in an agreement to settle.

Pursuant to the Parties' stipulation, Plaintiffs sent the court-approved notice of the lawsuit to Defendants' approximately 682 drivers. Approximately 83 drivers submitted consent- to-join forms.

As set forth in the Joint Discovery Report, the Parties disagreed on how discovery should proceed, including timing and scope. Doc. 41. As a result, the Court set a set a Scheduling Conference for March 30, 2020. Doc. 49. The Court continued the Scheduling Conference on March 27, 2020. Doc. 54.

Also during this time, the Parties exchanged discovery requests and initial responses and objections. By mid-April 2020, the Parties were engaged in a meet-and-confer process to address those responses and objections.

In addition, on April 22, 2020, Plaintiff moved for leave to amend his Complaint. Docs. 57-58. The Parties also continued to negotiate a potential resolution. Ultimately, the Parties agreed to the Settlement Agreement that was submitted to the Court (Doc. 65-1). As described

below *infra* § 4, the Settlement Agreement contemplates two rounds of payment. First, drivers who submitted consent to join forms during the court authorized collective action notice process ("Round 1 Class Members") will receive payments 14 days after preliminary approval. Second, drivers who not submit consent to join forms will receive payment after the Court approves the Rule 23 class action settlement ("Round 2 Class Members"). The Court preliminarily approved the Settlement on July 27, 2021 and set the final approval hearing for December 27, 2021. Doc. 71. Pursuant to the Settlement Agreement, approximately $170,000 was distributed to Round 1 Class Members. At this stage, Class Counsel now moves to approve the Rule 23 class action settlement and distribute payment to Round 2 Class Members.

**2. The Settlement Agreement**

The parties' Settlement Agreement creates a Settlement Fund of $1,000,000.00. After deducting administration costs, attorney's fees, litigation expenses, and the service awards for Plaintiffs, class members will each receive a *pro rata* share of the Settlement Fund based on (1) the number of miles they drove during the settlement period and (2) whether they filed an opt-in form in this lawsuit.

The Settlement will be divided into three subparts, which will be distributed at different times and according to different allocation formulas.

i. Round 1 FLSA Subclass

a) The Round 1 FLSA Subclass consists of approximately 82 Class Members who returned a consent to join form to Plaintiffs' Counsel on or before May 15, 2020.

b) The Round 1 FLSA Subclass Class Members have provided their consent to join this lawsuit and be bound by the results of this lawsuit, stating in relevant part: "I hereby consent to opt-in to this action to recover unpaid compensation, additional damages, attorneys' fees, and costs under the

Fair Labor Standards Act. If I am not a named plaintiff myself, I designate the Named Plaintiff to make all decisions on my behalf concerning the method and manner of conducting the case including settlement, the entering of an agreement with Plaintiff's counsel regarding payment of attorneys' fees and costs, and all other matters pertaining to this lawsuit. For purposes of this lawsuit, I choose to be represented by Biller & Kimble, LLC, and other attorneys with whom they may associate."

c) $170,000 of the Settlement Amount will be allocated to the Round 1 FLSA Subclass. This amount will be referred to as the "Round 1 FLSA Fund."

d) Each Round 1 FLSA Subclass Member's check will be equal to the Round 1 FLSA Subclass Class Member's prorated share of the Round 1 FLSA Fund based on the miles driven by each Round 1 FLSA Subclass Member during the Settlement Period divided by the total miles driven by all Round 1 FLSA Subclass Members during the Settlement Period.[1]

e) The Round 1 FLSA Fund will be distributed by the Claims Administrator to the Round 1 FLSA Subclass Class Members within 14 days of the Court's entry of the Preliminary Approval Order of this Settlement Agreement.

f) Checks may be cashed or negotiated within 160 days of being issued. After 160 days, the check will be void. The face of each check will contain the following language: "Void after 160 days." The proceeds of any voided checks will be distributed to the FLSA Contingency Fund.

ii. Round 2 FLSA Subclass

a) The Round 2 FLSA Subclass consists of those Class Members who are not part of the Round 1 FLSA Subclass, and who do not exclude themselves from the Settlement.

b) $830,000 of the Settlement will be allocated to the Round 2 FLSA Subclass. This amount will be referred to as the "Round 2 FLSA Fund."

[1] The Round 1 FLSA Fund was calculated based on 1.5× each Round 1 FLSA Subclass Member's unpaid wages if those unpaid wages were calculated using a settlement reimbursement rate of $.45 per mile. Defendants' data reflects that they reimbursed drivers, on average, $.32 per mile). As a result, each Round 1 FLSA Subclass Member should receive approximately $.195 per mile ($.13 × 1.5). The parties recognize that this settlement involves in excess of 8,535,680.02 million miles driven (for the Round 1 FLSA Subclass Class Members accounting for 823,895.11 miles) so that the use of approximations and rounding will impact each driver's individual settlement amount and, consequently the amounts stated are best approximations.

c) Each Round 2 FLSA Subclass Member's check will be equal to the Round 2 FLSA Subclass Member's pro rata share of the Round 2 FLSA Fund based on the miles driven by each Round 2 FLSA Subclass Member during the Settlement Period divided by the total miles driven by all Round 2 FLSA Subclass Members during the Settlement Period subject to a minimum payment of $25.00.

d) Within 40 days of the Court granting final approval of this Settlement Agreement, the Administrator will issue checks to each Round 2 FLSA Subclass Member.

e) Checks may be cashed or negotiated within 160 days of being issued. After 160 days, the check will be void. The face of each check will contain the following language: "Void after 160 days." The proceeds of any voided checks will be distributed to the FLSA Contingency Fund.

iii. Contingency FLSA Subclass

a) The Contingency FLSA Subclass is comprised of any Class Member who did not cash or negotiate a check from either the Round 1 or Round 2 distributions.

b) Members of the Round 1 and Round 2 Classes may request that the Administrator reissue stale checks (i.e., checks that we not cashed within 160 days) and the Administrator shall reissue said checks upon approval of Class and Defendants' Counsel. Members of the Round 1 and Round 2 Classes may make these requests until May 15, 2023.

c) The Administrator may request any additional identifying information or documents (if any) that the Administrator reasonably believes necessary to confirm the identity of the requesting Contingency FLSA Subclass Member.

d) Any unclaimed amounts in the Contingency FLSA Fund as of May 15, 2023 will be distributed ***cy pres*** to the Domino's Partners Foundation, a 503(c)(3) non-profit organization organized to help Domino's Team members in times of hardship and adversity. Distributions shall be made on or before May 31, 2023.

e) To the extent that there is a dispute regarding this process, the Parties and their Counsel will attempt to informally resolve the dispute. If informal

> resolution is unsuccessful, the Parties will submit the dispute to mediation and if mediation fails to the Court for adjudication.
> Checks may be cashed or negotiated within 160 days of being issued. After 160 days, the check will be void. The face of each check will contain the following language: "Void after 160 days." The proceeds of any voided checks after the final May 15, 2023 distributions described above will be distributed ***cy pres*** to the Domino's Partners Foundation, a 503 (c)(3) non-profit organization organized to help Domino's Team members in times of hardship and adversity. Said distributions shall be made 200 days after the final distributions are made.

Settlement Agreement, ¶ 4(C).

Opt in Plaintiffs and those who cash or negotiate their check agree to the following release of claims:

> By cashing or negotiating this check, I agree to join the lawsuit Fox v. Team Goliath, Inc., No. 5:19-cv-00195 (E.D.K.Y.) (the "Lawsuit") and agree to be bound to the Settlement and Release Agreement in the Lawsuit. I irrevocably and unconditionally waive, release, extinguish, acquit, and forever discharge any claim I may or might have against Defendants or any of the Released Parties (as defined by the Settlement and Release Agreement) for the wage and hour claims that were asserted in the Lawsuit or arising out of the facts asserted in the Lawsuit, including under-reimbursement of expenses, "dual jobs/80-20" claims, tip credit notice claims, wage notification, posting, deduction, withholdings, recordkeeping and paycheck claims, and any related common law and equitable (e.g., breach of contract, unjust enrichment, etc., including any related claims for liquidated damages, penalties, attorneys' fees and costs, and under the federal Fair Labor Standards Act and parallel state, local, or municipal wage and hour laws, including Kentucky law whether known or unknown; and any and all derivative claims relating to unpaid wages, minimum wage or overtime compensation against the Defendants or Released Parties relating to the facts asserted in this Lawsuit.

The Settlement Agreement also allows any class member who does not timely cash his/her check to request the Claims Administrator reissue his or her check at any time until May 15, 2023. Settlement Agreement, ¶ 7(O). The Court retains continuing jurisdiction over the Action to enforce, interpret, and otherwise implement the settlement.

The parties hired a Claims Administrator to distribute the Notice of Settlement. Notice was sent to each class members. Defendants also complied with the Class Action Fairness Act ("CAFA") by sending notices to the appropriate government officials.

The Settlement Agreement provides for payment of attorneys' fees in the amount of 1/3 of the Settlement Fund, reimbursement of litigation expenses, administrative costs, and service awards to Plaintiff Brian Fox.

### 3. Analysis

#### a. Class Certification is Appropriate for Settlement Purposes.

The Court hereby certifies the following Rule 23 settlement class:

> All current and former Delivery Drivers employed by Team Goliath, Inc., from May 3, 2016 through May 15, 2020 (the "Class Period") at the Team Goliath's Domino's stores owned, operated, and/or controlled by Defendants. These individuals are collectively referred to as the "Class" and individually referred to as "Class Members."

The Settlement Class meets all of the requirements for class certification under Federal Rule of Civil Procedure 23(a) and (b) (3) for purposes of settlement.[2] Federal Rule of Civil Procedure 23(a)(1) is satisfied because there are 682 class members, and thus, joinder is impracticable. Plaintiff's Unopposed Motion for Preliminary Approval, Doc. 65 at PAGEID 476. Plaintiff satisfies Federal Rule of Civil Procedure 23(a)(2) because Plaintiff and the class members share common issues of fact and law. Plaintiff alleges that Defendants' reimbursement policy harmed all of the class members in the same way. Defendants do not contest that commonality is satisfied for settlement purposes.

[2] The Court acknowledges that Defendants agreed to class certification pursuant to Rule 23 and collective action certification pursuant to Section 216(b) for settlement purposes only.

For the same reason, Plaintiff satisfies the typicality requirement in Federal Rule of Civil Procedure 23(a)(3) because Plaintiff's claims arise from the same factual and legal circumstances that form the basis of the class members claims. Doc. 65 at PAGEID 488-495. Defendants do not contest that typicality is satisfied for settlement purposes.

Plaintiff satisfies Federal Rule of Civil Procedure 23(a)(4) because there is no evidence that he has interests antagonistic to or at odds with those of class members.

Plaintiff also satisfies Federal Rule of Civil Procedure 23(b)(3). Class members' common factual allegations and legal theory—that Defendants under-reimbursed the delivery drivers, paid them at the wrong rate for some hours, and took improper deductions from wages—predominate over any factual or legal variations among class members. Defendants do not contest predominance is satisfied for settlement purposes.

The Court appoints Biller & Kimble, LLC, and Robert Abel Law as class counsel because they meet all of the requirements of Rule 23(g).

Finally, the Court finds that the Class Notice process undertaken by the Claims Administrator met the requirements of Rule 23(e)(1), and the government notices provided met the requirements of CAFA. Plaintiff's Unopposed Motion for Final Approval, pp. 4-5.

The Court also finds that all FLSA opt in Plaintiffs are properly joined to the case, and that the case is properly certified as a collective action pursuant to Section 216(b) of the FLSA. *See* Doc. 65.

The Court **GRANTS** certification of a Rule 23 and FLSA Section 216(b) settlement class of Defendants' delivery drivers allegedly employed by Defendants from May 3, 2016 through May 15, 2020 (the "Class Period").

**b. The parties' settlement on behalf of the Round 2 class satisfies the standard for approval.**

Rule 23(e) requires court approval for a class action settlement so that it is procedurally and substantively fair, reasonable, and adequate. FED. R. CIV. P. 23(e)(2).

The fairness, reasonableness, and adequacy of a settlement is measured by the seven factors identified in *International Union, UAW, et al. v. General Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) ("*UAW*) The *UAW* factors are:

> (1) the risk of fraud or collusion, (2) the complexity, expense and likely duration of the litigation, (3) the amount of discovery engaged in by the parties, (4) the likelihood of success on the merits, (5) the opinions of class counsel and class representatives, (6) the reaction of absent class members, and (7) the public interest.

*Ware v. CKF Enterprises, Inc.*, No. 5:19-cv-18, 2020 U.S. Dist. LEXIS 82879, at *32 (E.D. Ky. May 19, 2020). Of those factors, likelihood of success is the most important and "warrants discussion before the others." *Id.*

Plaintiffs drove vehicles to deliver pizzas, and Defendants reimbursed the drivers for the use of those vehicles. Defendants' data reflects that they reimbursed the drivers an average of $.315 per mile. Aside from those basic facts, however, the Parties vigorously dispute the law as it applies to those facts.

As described above, Plaintiffs contend that Defendants must either keep records of and reimburse the drivers' actual expenses or reimburse at the IRS business mileage rate. Defendants contend that they may reimburse a "reasonable approximation" of the expenses. The Sixth Circuit has not decided this issue.

Resolution of this issue in Plaintiff's favor would result in approximately $1.66 million in unpaid wages (unliquidated) across the maximum possible timeframe. Resolution of this issue in

Defendants' favor would allow them to argue that the amount they reimbursed was a reasonable approximation, resulting in no liability at all.

Putting aside this fundamental legal dispute, additional factors would play into the potential, recoverable damages. . These claims were subject to legal and procedural challenges from Defendants, including Defendants' anticipated arguments that the claims were entirely preempted by the FLSA and that class certification is unwarranted. Note that the Kentucky state law claims may be subject to a longer (5 years) statute of limitations. The above $1.66 million number is calculated across five years rather than the FLSA's shorter two or three year timeframe.

Plaintiff recognizes that Defendants had many ways of potentially reducing any award, even to zero. Thus, this case presented substantial uncertainty, which this settlement eliminates. Indeed, "[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Hupt & Co.*, 304 F.Supp. 917, 934 (S.D.N.Y. 1969).

As it stands, the settlement represents an substantial recovery for the class members. And, moreover, if approved, the settlement will quickly put money in the hands of those class members who have already joined the case. When a settlement assures immediate payment of substantial amounts to class members, "even if it means sacrificing speculative payment of a hypothetically larger amount years down the road," settlement is reasonable. *Gilliam v. Addicts Rehab. Ctr. Fund.*, No. 05 Civ. 3452, 2008 U.S. Dist. LEXIS 23016, at *13 (S.D.N.Y. Mar. 24, 2008) (internal quotation marks and citations omitted). Finally, those who do not take part in this settlement do not waive their FLSA claims (only their state law claims, for which they still receive a payment). By establishing a Contingency FLSA Fund and having the Court retain jurisdiction

over the settlement, this settlement provides an easy avenue for any of those individuals to receive a payment under the agreement and likewise serves the interests of judicial economy.

This settlement is an excellent result and strongly favors approval.

**c. Other factors also supportapproval.**

When evaluating settlements, courts also look at other factors, including (1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the opinions of class counsel and class representatives; (4) the reaction of absent class members; and (6) the public interest. *Ware*, 2020 U.S. Dist. LEXIS 82879, at *32

**The risk of fraud or collusion**. The record demonstrates record demonstrates that the settlement was negotiated by capable, experienced counsel, in good faith, and at arms' length, following an extensive discovery process.

**Complexity, expense, and likely duration.** Wage and hour class and collective actions are inherently complex and time-consuming. *Arledge v. Domino's Pizza, Inc.*, No. 3:16-cv-386-WHR, No. 3:16-cv-386, 2018 U.S. Dist. LEXIS 179474, at *5 (S.D. Ohio Oct. 17, 2018). This factor supports approving the proposed settlement.

**The stage of the proceedings and amount of discovery completed.** First, the case's posture and circumstances surrounding the negotiations shows that the settlement was negotiated in good faith. On November 6, 2019, the Parties attended an all-day mediation with Mark Travis. The case did not settle at that time. Instead, the Parties sent the stipulated FLSA collective action notice to the 682 putative class members. Approximately 83 of those Class Members those joined the lawsuit. The Parties also exchanged discovery requests and initial

responses and objections. The Parties were engaged in meet and confer efforts regarding those responses and objections.

Second, although discovery had just begun, the Parties exchanged sufficient information relevant to calculating Defendants' alleged potential exposure and the class's alleged potential damages. Thus, both Parties were able to properly evaluate the case's strengths and weaknesses for settlement purposes.

Third, counsel for both Parties are experienced in the specific area of "pizza delivery driver lawsuits," having battled over relevant issues in courts throughout the country. As discussed above, the proposed settlement resulted from arm's-length negotiations between counsel well-versed in pizza delivery driver wage and hour law.

Plaintiff's counsel are well-versed in this area of law and the strengths and weaknesses of the claims at issue. *See Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2019 U.S. Dist. LEXIS 204371, at *18 (S.D. Ohio Nov. 25, 2019). Counsel are able to assess the strengths and weaknesses of the claims, based on the data and information exchanged. In light of these factors, the parties are able to properly evaluate settlement at this stage.

**The judgment of experienced trial counsel.** Plaintiff's counsel attests that, given the strengths and weaknesses of the claims and collectability, this settlement is fair, adequate, and reasonable.

**The reaction of absent class members.** No class member objected or opted out of this Settlement Agreement.

**The public interest.** The public interest generally favors settling class action litigation. This case is no different.

The Court therefore **APPROVES** the parties' Settlement Agreement as fair, adequate, and reasonable pursuant as to both the Rule 23 Class and FLSA collective.

Likewise, the Court **APPROVES** the parties' Settlement Agreement and determines that the settlement is a reasonable compromise of a bona fide dispute of the claims and defenses in this matter, and there is nothing in the record to suggest that the settlement would otherwise frustrate the implementation of the FLSA.

**d. Fees, Expenses, and Service Awards**

Plaintiff's Counsel asks the Court to approve an attorneys' fees award of one-third of the Settlement Fund, *i.e.*, $333,3333.33. Defendants do not object to the requested fee award. In granting preliminary approval, the Court provisionally approved Plaintiff's Counsel's request for fees and costs, and explained that the fees and costs would be finally approved after taking into account any objections and argument at the final fairness hearing. The Notice period is closed, and no class members objected to the settlement or the requested fees and costs.

It is common in the Sixth Circuit to examine the reasonableness of a fee request through a percentage of recovery analysis. The Court finds this request for attorneys' fees to be fair, adequate, and reasonable, and therefore **GRANTS** Plaintiff's Counsel's request for attorneys' fees in the amount of $333,333.33.

The Court also **GRANTS** Plaintiff's Counsel's request for reimbursement of litigation costs in the amount of $_[3], and **APPROVES** the claims administration costs of $14,000 to date as fair, adequate, and reasonable.

**e. Service Awards**

[3] Plaintiff will supplement the total costs information once the claims administrator provides the costs for the mailing of the notice of hearing date change.

The Court also approves the request for service awards in the amount of $10,000 to Brian Fox. Plaintiff provided valuable insight to Class Counsel throughout the case, and their efforts resulted in substantial payments to a class of over 682 minimum wage pizza delivery drivers. The requested service award is reasonable. Accordingly, the Court **GRANTS** Plaintiffs' request for service awards in the amount set forth herein.

### 4. Conclusion

Having reviewed Plaintiff's Unopposed Motion for Final Settlement Approval, the Court **GRANTS** the motion. Settlement class members are permanently enjoined from prosecuting against the Released Parties (as defined in the Agreement) any and all of the Released Claims (as defined in the Agreement).

The Hearing scheduled for January 7, 2022 is **CANCELLED**. This action is hereby **DISMISSED** with prejudice, with the Court to **RETAIN** jurisdiction to enforce the Agreement. The Parties are ordered to carry out the settlement according to its terms.

**IT IS SO ORDERED**, this December 29, 2021.

**Signed By:**
***Joseph M. Hood*** JMH
**Senior U.S. District Judge**